1    Leland H. Belew (SBN 293096)
2    LBelew@Milberg.com
     **MILBERG COLEMAN BRYSON**
3    **PHILLIPS GROSSMAN PLLC**
     280 S. Beverly Drive
4    Beverly Hills, CA 90212
     Telephone: (312) 224-8685
5    Facsimile: (865) 522-0049
6    *Attorney for Plaintiffs*

7    *[Additional Attorneys listed on signature page]*

8                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
9

10

11   **STACY PENNING and ERICA ROBINSON**
     **individually and on behalf of all others similarly**    **Case No.**    3:24-cv-00962
12   **situated,**

13                              **Plaintiffs,**

14            **v.**                                           **COMPLAINT**

15   **AMERICAN HONDA MOTOR CO.,**
16   **INC.,**

17                              **Defendant.**                 **DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs Stacy Penning and Erica Robinson ("Plaintiffs"), by and through counsel, bring this Class Action Complaint against Defendant American Honda Motor Co. ("Honda," "Acura," or "Defendant"), individually and on behalf of all other similarly situated, and allege, based upon personal knowledge as to their own acts and experiences, and, as to all other matters, based on the investigation of counsel and experts, as follows:

**NATURE OF THE CASE**

1.      Defendant manufactures and sells Honda and its' luxury Acura cars in the U.S. Nevertheless, Defendant has known for some time that certain vehicles it manufactured between 2017 and 2020 all contain a potentially life-threatening defect in their fuel pumps.  This defect is so serious that Defendant has warned its customers to not drive the effected vehicles until the defect is remedied because the defective fuel pump could fail and cause the engine to stall out while the car is being driven.

2.      No reasonable car buyer would have purchased Defendant's cars if he or she had known about this defect, or such a purchaser would have at least paid far less for such a car.  Defendant knew or should have known about the defect at the time of sale, but chose to cover-up the problem for years, allowing unknowing consumers to purchase cars with a defect that could cause accidents and serious bodily injuries to the owners and to innocent third parties.

3.      Defendant has belatedly acknowledged that it has a duty to repair the defect, yet Defendant has failed to fulfill that duty.  It has delayed recalls, and issued recalls on some affected vehicles while ignoring other affected vehicles.  Even when Defendant does issue the recalls it has failed to provide a sufficient supply of parts to allow dealers to timely repair the defects causing car owners to have to wait months for repairs, which means the owners are unable to use their very expensive cars for long periods of time.

4.      For these reasons, Plaintiffs bring this case individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased a 2018-2020 Acura ILX, 2018-2020 Acura MDX, 2018-2020 Acura MDX Hybrid, 2017-2020 Acura NSX, 2018-2020 Acura RDX, 2018-2020 Acura RLX, 2018-2020 Acura TLX, 2018-2020 Honda Accord, 2017-2020 Honda

Accord Hybrid, 2018-2020 Honda Civic, 2018-2020 Honda Civic Type -R, 2018-2019 Honda Clarity Plug-In Hybrid, 2018-2020 Honda CR-V, 2020 Honda CR-V Hybrid, 2018-2019 Honda FIT, 2018-2020 Honda HR-V, 2019-2020 Honda Insight, 2018-2020 Honda Odyssey, 2019-2020 Honda Passport, or, a 2018-2020 Honda Ridgeline vehicle that was designed, manufactured, distributed, advertised, marketed, sold, and/or leased by Honda or Honda's parent, subsidiary, or affiliates ("Class Vehicles" or "Vehicles").[1]

5.     Honda designed, manufactured, distributed, advertised, marketed, sold, and/or leased the Class Vehicles from at least 2017 to the present.

6.     Honda knew or should have known the Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Vehicles' fuel pump impeller which was improperly molded, resulting in low density impellers. Over time, the low-density impeller can deform and interfere with the fuel pump body, rendering the fuel pump inoperative. Inoperative fuel pumps may cause the engine to either experience difficulty starting, fail to start entirely, intermittently lose power, or, stall while driving, greatly increasing the risk of a crash or injury ("Fuel Pump Defect").

7.     The function of the fuel pump in vehicles is to convey the required quantity of fuel from the tank to the engine at the necessary pressure. Afterwards, the fuel is converted into energy that plays a role in starting the vehicle engine. Accordingly, drivers need a properly functioning fuel pump in order to safely and reliably start and utilize their Vehicles.

8.     This common design and/or manufacturing defect in Honda's fuel pump is a potentially life-threatening safety issue.

9.     The most important duty of a car manufacturer is to provide consumers with a safe car. A second related duty is to warn consumers and fix a car where the manufacturer learns of a vehicle defect that implicates serious safety issues.

10.     Honda has breached these fundamental duties. Each and every Class Vehicle contains the Fuel Pump Defect that presents consumers with an unacceptable risk of vehicle failure and spontaneous engine stalling while driving.

---

[1] https://static.nhtsa.gov/odi/rcl/2023/RCAK-23V858-9680.pdf (last viewed February 12, 2024).

11.     The Fuel Pump Defect exposes putative Class Members to an unreasonable and increased risk of accident, injury, or death should their vehicle's engine fail while in operation, The Fuel Pump Defect also exposes passengers in the Vehicles, as well as other drivers on the road, to an unreasonable and increased risk of accident, injury, or death.

12.     The Fuel Pump Defect plagues an ever-increasing number of Honda and Acura vehicle models and years, including the Class Vehicles. Many putative Class Members, including Plaintiffs Stacy Penning and Erica Robinson, were not even notified by Defendant, but rather learned about the recall through third parties, like Mrs. Robinson's insurance carrier. Even when these individuals were notified, the notices told them they were at risk of engine failure because of the Fuel Pump Defect, putting them in danger if they continue to operate their vehicle, or, costing them loss of use of their vehicles for until the defect could be repaired.

13.     The fuel pump failure is the direct result of a defect known to, concealed by, and still unremedied by Honda. Not only did Honda actively conceal the Fuel Pump Defect from consumers, but they also concealed its consequences, including the serious safety hazards and monetary harm caused by the Fuel Pump Defect.

14.     Honda knew or should have known about the Fuel Pump Defect as evidenced by: (1) consumer complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Honda directly; (3) technical service bulletins and safety recalls issued by Honda in an attempt to address the Fuel Pump Defect; and (4) Honda's own pre-sale durability testing of the Class Vehicles.

15.     Despite Honda's longstanding knowledge of the Fuel Pump Defect in the Class Vehicles, the automaker has issued piecemeal and belated recalls over the last four years, all while omitting similar vehicles without apparent explanation.

16.     Honda's purported remedies for the Fuel Pump Defect under these recalls only provide fuel pump replacements, but do not reimburse vehicle owners and lessees for out-of-pocket expenses, loss of use, or loss of value. Replacement fuel pump modules are also not readily

available, so vehicle owners and lessees are left without a safely operable vehicle for unknown and often lengthy periods.

17.     Because of Honda's unfair, misleading, deceptive, and fraudulent business practices, in failing to disclose the Fuel Pump Defect to Plaintiffs and putative Class Members, owners and lessees of Class Vehicles are injured in fact, incurred damages, and suffered ascertainable losses in money and property. Had Plaintiffs and the putative Class Members known of the Fuel Pump Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for them. Fuel pump failure in the Class Vehicles also requires expensive repairs, car rentals, car payments, towing charges, time off work, other miscellaneous costs, and loss of use. Moreover, because of the Fuel Pump Defect and Honda's concealment, the Class Vehicles have a lower market value and are inherently worth less than they otherwise would be.

18.     Under Honda's Vehicles' New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[2]

19.     Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class Members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

20.     Likewise, Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class Members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

21.     However, Defendant knew, or at least should have known, of the defects at the time of sale or lease of the defective Vehicles.  Plaintiffs and Class Members, however, had no such knowledge.  The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

---

[2]  A  true  and  correct  copy  of  the  New  Vehicle  Limited  Warranty  is  available  at https://owners.acura.com/Documentum/Warranty/Handbooks/2019_Acura_Warranty_Basebook _BWL07532.pdf (Last Visited February 14, 2024).

22.     Prior to purchasing or leasing Class Vehicles, Plaintiffs and other Class Members did not know that the Class Vehicles would contain the Fuel Pump Defect, putting them at risk while operating their vehicles.

23.     Upon information and belief, Honda knew or should have known that the Class Vehicles were and are defective, suffer from the Fuel Pump Defect, and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Honda failed to disclose this defect to Plaintiffs and Class Members at the time of purchase or lease, or thereafter.

24.     Had Plaintiffs and Class Members known about the Fuel Pump Defect at the time of sale or lease, as well as the associated costs related to the Fuel Pump Defect, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

25.     As a result of their reliance on Honda's omissions and/or misrepresentations, Plaintiffs, and other owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

26.     The first priority of an auto manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely and its mechanical systems (such as the fuel pump) work properly. Moreover, an auto manufacturer that is aware of dangerous design and manufacturing defects that cause its vehicles to lose power and stall sporadically must promptly disclose and remedy such defects.

**JURISDICTION AND VENUE**

27.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

28.    This Court has personal jurisdiction over Defendant by virtue of their transactions and business conducted in this judicial district, and because Defendant are headquartered in California. Defendant has transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

29.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, because Defendant transacts substantial business and are headquartered in this district. Defendant advertised in this district and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Additionally, Plaintiffs used their Vehicles, experienced the symptoms and malfunctions in their Vehicle which underlie their claims, and/or had their Vehicle serviced by authorized Honda dealerships in this District. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**PARTIES**

30.    Stacy Penning is a California citizen who lives in El Cerrito, located in Contra Costa County, California. In March 2023, Mr. Penning purchased a certified pre-owned 2018 Honda Civic from El Cerrito Honda, in El Cerrito, California. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Honda Motor Company. Through his exposure and interaction with Honda, Plaintiff Penning was aware of Honda's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Honda disclose the Fuel Pump Defect to him. Had Defendant disclosed the safety-related defect  at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it.

31.    Erica Robinson is a California citizen who lives in Long Beach, located in Los Angeles County, California. In October 2019, Mrs. Robinson purchased a new 2019 Honda Accord from McGrath Honda of Elgin, in Elgin, Illinois. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Honda Motor Company. Through her exposure and interaction with Honda, Plaintiff Robinson was aware of Honda's uniform and

pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Honda disclose the Fuel Pump Defect to her. Had Defendant disclosed the safety-related defect at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it.

32.    Defendant American Honda Motor Company, Inc. is a California corporation, and is a North American subsidiary of Honda Motor Company, Ltd. Defendant is headquartered in Torrance, California and maintains central operations in California.

33.    From its headquarters in Torrance, Defendant combines product sales, service, and coordinating functions for Honda in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Honda and Acura brand automobiles. The decisions regarding the marketing and sale of the infotainment system, and decisions regarding the disclosure or non-disclosure of the defect were in whole or substantial part made by Defendant in California and were purposefully emanated by Defendant in California.

34.    Honda, through its various entities, designs, manufactures, advertises, markets, distributes, and sells and/or leases Honda and Acura vehicles in this District and many other locations in the United States and worldwide. Honda and/or its agents designed, manufactured, and installed the Honda fuel pumps in the Class Vehicles. Honda also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to Class Vehicles.

35.    In 1986, Defendant created its first luxury name marque, Acura. By 2006, Defendant established research and development facilities dedicated solely to its vehicles in Torrance, California with related facilities dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.

36.    On information and belief, Defendant Honda is responsible for the distribution, service, repair, installation, and decisions regarding the Class Vehicles as they relate to the Fuel Pump Defect.

37.     Honda sells cars in part via communications that it authorized its dealers to make about Honda vehicles, including the defective Vehicles discussed herein.  This includes authorizing Honda dealers to distribute brochures and other marketing and promotional material.  Honda, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the defective Vehicles.

38.     Authorized Honda dealers are Honda's agents, such that an opportunity to receive information from an authorized Honda dealership is an opportunity to receive information directly from Honda itself.  See *Daniel v. Ford Motor Co*., 806 F.3d 1217, 1226 (9th Cir. 2015).  This agency relationship is established by the fact that, among other things: Honda's Acura logo is displayed at authorized dealerships; Honda issues technical bulletins and service instructions to dealerships detailing potential vehicle problems, and also relies on them to perform warranty service for Honda and push software updates to customers' vehicles; Honda distributes various adverting and promotional material to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express warranty, Honda requires its customers to return to its authorized dealerships to perform warranty repair.[3]

## **FACTUAL ALLEGATIONS**

**A.     The Fuel Pump Defect**

39.     Honda has designed, manufactured, distributed, advertised, marketed, sold, and/or leased Honda and Acura vehicles, including the Class Vehicles.

40.     Defendant manufactured the Class Vehicles' fuel pumps. On information and belief, the fuel pumps in the Class Vehicles were built with the same parts, the same design, on the same assembly lines, and using the same manufacturing processes.

41.     At the time of manufacture, the fuel pump impeller in the Class Vehicles were improperly molded, resulting in low density impellers. Over time, the low-density impeller can deform and interfere with the fuel pump body, rendering the fuel pump inoperative. If the fuel

---

[3] See New Vehicle Limited Warranty, supra note 2, at 37 ("How to Get Warranty Service:  You should take your vehicle… to an authorized Acura dealer during normal service hours.")

pump module is inoperative, the engine may not start or can stall while driving, increasing the risk of a crash or injury.

42.    Each of the Class Vehicles contains a fuel pump. The fuel pump is a small electric motor that transfers fuel from the tank to the engine. If the fuel pump isn't operating properly, the car's engine either will not run, or will not run well.

43.    Fuel pumps consist of a pressure regulator, fuel level sender, strainers, impeller, and armature. The Fuel Pump Defect in the Class Vehicles is directly related to the impeller. The Class Vehicles' fuel pumps use an impeller-style system that pulls fuel through it, creating positive pressure on the engine side of the pump. Once pressure has built, the pump is intended to hold it by preventing fuel from bleeding back into the tank. In this way, there is always fuel in the line— "primed"—so the engine can start when commanded.

44.    The fuel pumps in the Class Vehicles were exposed to solvents during the manufacturing process which causes components in the tank to crack and render the vehicle engine inoperable. a fuel pump plays a critical role in delivering fuel from the gas tank to the engine. If the fuel pump is not functioning properly, it can lead to a range of problems, including reduced engine performance, stalling, and even engine failure. Attempting to drive a vehicle with a faulty fuel pump can be dangerous and is generally not recommended. Even if the engine manages to start and run, a partially failing fuel pump can lead to poor performance, reduced power, and stalling while driving, which can be a hazard on the road. Continuing to drive a vehicle with a fuel pump problem can also cause damage to other engine components and lead to costly repairs.

**B.    Defendant Was Aware That the Fuel Pump Defect Results in a Serious Risk of Engine Failure Across Multiple Models and Model Years of Vehicles.**

45.    On information and belief, Defendant knew or should have known about the Fuel Pump Defect as evidenced by: (1) consumer complaints lodged with NHTSA and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Honda and Acura directly; (3) technical service bulletins and safety recalls issued by Honda and Acura in an attempt to address the Fuel Pump Defect; and (4) Honda and Acura's own pre-sale durability testing of the Class Vehicles.

46.     It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of their vehicles.  On information and belief, Honda did so for the defective Vehicles and tested the operation of the fuel pump systems prior to selling the defective Vehicles.  Given the immediacy and frequency of consumer complaints about the fuel pump system contained in the defective Vehicles, it is apparent that Honda knew about the Fuel Pump Defect before the defective Vehicles were sold or leased.

47.     Honda also knew or should have known about the Fuel Pump defect based on the large number of warranty repairs made immediately upon the Vehicles' launch.

48.     Upon information and belief, Honda regularly compiles and analyzes detailed warranty service information regarding repairs performed under warranty at its network of dealerships. Indeed, on information and belief, Honda requires dealers to maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

49.     As of December 12, 2023, Honda had at least 4,042 warranty claims related to this issue from January 2018 through December 12, 2023.

50.     An examination of NHTSA complaints illustrates Putative Class Members' experiences with the Fuel Pump Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original).

2018 Honda Civic

NHTSA Complaint dated December 24, 2023: The contact owns a 2018 Honda Civic. The contact stated that the vehicle was parked for five days while she was out of town however, after returning home and attempting to start the vehicle, the vehicle failed to start. The local Honda dealer was contacted by phone and the contact was informed that there was a recall for the fuel pump motor however, the parts were not available. The VIN was included in NHTSA Campaign Number: 23V858000 (Fuel System, Gasoline) however, the part to repair the vehicle was not yet available. The vehicle was not diagnosed or repaired by an independent mechanic or dealer. The manufacturer was not made aware of the failure. The failure mileage was approximately 13,054. (NHTSA ID Number: 11562021)

NHTSA Complaint dated January 24, 2024: The contact owned a 2018 Honda Civic. The contact stated while driving at approximately 30 MPH a warning that read "analyzing the system" appeared on the instrument cluster, then the steering wheel independently veered to the right. The contact stated that he crashed into a vehicle parked on the side of the road. The contact stated that his vehicle's front passenger-side bumper struck the rear driver-side bumper and tire of the parked vehicle. The contact stated that all of his vehicle's air bags deployed. The contact stated that the damage to his vehicle was to the front passenger side bumper and headlights which were crushed by the crash force. The contact stated that the right front tire was damaged and the axle was fractured by the crash. The contact stated that he was not injured. The police were called and wrote a report. The contact stated that his vehicle was towed to an impound lot and later declared a total loss by the contact's insurance provider. The contact had recently received notification from the manufacturer about NHTSA Campaign Number: 23V858000 (Fuel System, Gasoline), but the crash and failure had occurred last month. The contact related the failure and subsequent crash to NHTSA Campaign Number: 23V858000 (Fuel System, Gasoline). The manufacturer was not informed of the failure. The failure mileage was approximately 70,000. (NHTSA ID Number: 11571595)

NHTSA Complaint dated November 26, 2018: AT 4400 MILES ON THE 2018 CIVIC HATCHBACK 1.5 L (APPROX 4 MOS) THE VEHICLE LOST POWER MOMENTARILY WHILE ACCELERATING AT ABOUT 30 MPH AND HAD A STRONG GAS SMELL IN THE CABIN. A CHECK OF THE OIL SHOWED THAT IT WAS EXTREMELY OVERFILLED WHEN PREVIOUS CHECKS DID NOT. HONDA DEALER (IDE HONDA, ROCHESTER, NY) REPLACED THE OIL AND OFFERED NO CORRECTIVE ACTION OR INFORMATION. (NHTSA ID Number: 11154111)

NHTSA Complaint dated April 15, 2019: TL* THE CONTACT OWNS A 2018 HONDA CIVIC. WHILE AT A RED LIGHT, THE VEHICLE STALLED. THE GEAR HAD TO QUICKLY BE SHIFTED INTO PARK TO RESTART THE VEHICLE. IN ADDITION, THE BRAKE HOLD INDICATOR FLASHED WITHOUT THE CONTACT

1    ACTIVATING THE FEATURE. THE BUTTON HAD TO BE MANUALLY PRESSED TO

2    PREVENT THE WARNING INDICATOR FROM FLASHING. THE CONTACT HAD TO

3    DISENGAGE THE BRAKE SYSTEM TO MANEUVER THE BRAKE PEDAL AS A

4    SAFETY PRECAUTION WHILE THE VEHICLE WAS IN MOTION. THE DEALER

5    WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED. THE VEHICLE

6    WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS NOT

7    AVAILABLE. (NHTSA ID Number: 11196878)

8    NHTSA Complaint dated July 23, 2019: TL* THE CONTACT OWNS A 2018 HONDA

9    CIVIC. WHILE DRIVING APPROXIMATELY 25 MPH, THE VEHICLE SUDDENLY

10   STALLED. THE VEHICLE'S STOP WARNING ALERT NOTIFIED THE DRIVER TO

11   PULL OVER. THE VEHICLE WAS TAKEN TO SCOTT ROBINSON HONDA (20340

12   HAWTHORNE BLVD, TORRANCE, CA 90503) TO BE DIAGNOSED, BUT THEY

13   WERE UNABLE TO REPLICATE THE FAILURE. THE DEALER TURNED OFF THE

14   SYSTEM SENSOR. THE CONTACT ALSO STATED THAT THE STEERING WHEEL

15   SEIZED. THE CONTACT TOOK THE VEHICLE TO DCH GARDENA HONDA (15541 S

16   WESTERN AVE, GARDENA, CA 90249, 301-660-7286) WHERE THE FAILURE

17   INITIALLY COULD NOT BE REPLICATED. DURING THE THIRD TEST, WITH THE

18   CONTACT IN THE VEHICLE, THE FAILURE RECURRED. THE VEHICLE WAS NOT

19   REPAIRED AND THE CAUSE OF THE FAILURES WAS NOT SPECIFIED. THE

20   CONTACT STATED THAT THEY WERE WAITING FOR HONDA'S CORPORATE

21   OFFICE TO RESPOND. THE MANUFACTURER PROVIDED CASE NUMBER:

22   09732156. THE FAILURE MILEAGE WAS 11,200. (NHTSA ID Number: 11243302)

23                              2020 Honda Civic

24   NHTSA Complaint dated August 18, 2020: I WAS DRIVING MY CAR FROM

25   BENICIA,CALIFORNIA TO SACRAMENTO AND 20 MINS AWAY FROM MY

26   DESTINATION MY CAR WARNING LIGHTS ALL TURNED ON AND I WENT FROM

27   GOING 70 TO ONLY BEING ABLE TO GO NO MORE THAN 15. GOT IT TOWED TO

28   HONDA AND FOUND OUT MY HIGH PRESSURE FUEL PUMP WAS BAD. LOOK IT

UP AND SEEN THAT MANY MORE CARS LIKE MINES HAD THE SAME PROBLEM (NHTSA ID Number: 11350366)

2019 Honda Accord

NHTSA Complaint dated June 5, 2021: The contact owns a 2019 Honda Accord Sedan. The contact received notification of NHTSA campaign number: 21V215000 (Fuel system, Gasoline). The vehicle was then taken to a local dealer where the recall was serviced. A month later while driving 50 mph, the vehicle stalled without warning. The contact then took the vehicle back to the dealer where it was diagnosed and determined that the fuel pump needed to be replaced. The vehicle was repaired. The manufacturer had been informed of the failure. The failure mileage was approximately 14,800. (NHTSA ID Number: 11420176)

NHTSA Complaint dated February 1, 2021: The contact owns a 2019 Honda Accord. The contact stated that while driving at various speeds, the vehicle would stall as several warning lights appeared on the instrument panel. The contact had taken the vehicle to an unknown dealer where a software update was performed; however, the failure persisted. The contact then stated that he had taken the vehicle to another dealer and was informed that his failure was related to a defective fuel pump; his vehicle was also under NHTSA Campaign Number: 21V215000(Fuel System, Gasoline); however, the parts for the repair were on backorder. The manufacturer was also notified of the failure. The vehicle had yet to be repaired and remained in the possession of the dealer. The failure mileage was 40,220. Parts distribution disconnect. (NHTSA ID Number: 11478652)

NHTSA Complaint dated September 4, 2023: The contact owns a 2019 Honda Accord. The contact stated that while driving at an undisclosed speed, the vehicle stalled. There was no warning illuminated. The vehicle was towed to the dealer, who informed the contact that the fuel pump needed to be replaced. The vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 104,422. (NHTSA ID Number: 11543234)

14

2018 Acura MDX

NHTSA Complaint dated May 29, 2018: STARTER FAILED WITH AUTO START/STOP WHILE STOPPED IN TRAFFIC. SINCE ENGINE WOULDN'T START, CAR SHIFTED TO PARK AUTOMATICALLY AND CAN NOT SHIFT TO NEUTRAL WITH THE ENGINE OFF AND UNABLE TO START. THE BATTERY WAS FINE AND COULD GO INTO AUX MODE, BUT STILL WON'T SHIFT TO NEUTRAL. ASIDE FROM QUALITY ISSUES RELATED TO STARTER, SIGNIFICANT SAFETY DESIGN FLAW. (NHTSA ID Number: 11099303)

NHTSA Complaint dated August 1, 2022: The contact owns a 2018 Acura MDX. The contact stated while driving at an undisclosed speed, the vehicle stalled. Additionally, the contact was unable to shift into park (P) or into neutral (N) as the gear shifter became stuck into drive (D) position. The contact stated as he turned off and restarted the vehicle several times, the gear shifter responded as needed. Several unknown warning lights were illuminated. The vehicle was taken to the local dealer who informed the contact that they could not duplicate the failure. The vehicle was not repaired. The contact associated the failure with NHTSA Campaign Number:19V298000 (Engine and Engine Cooling). The manufacturer was contacted but no assistance was provided. The failure mileage was approximately 44,000. (NHTSA ID Number: 11488902)

NHTSA Complaint dated December 6, 2023: Honda refuses to inspect my vehicle to determine if it is safe to drive. They say they will not inspect vehicles untill they have the repair parts available. That puts me at risk for driving a defective vehicle and having an accident that could cause property damage and/or death for me and other people. As I do not have the technical expertise to inspect the vehicle myself, I have no choice but to park it until Honda decides to act. I belive that this is unreasonable and constitutes a failure to act timely. They should at least be willing to do the inspection now to determine if the vehicle is safe or not and then do any necessary repairs once the parts are available. They will need to inspect the vehicle eventually anyway, so I am not asking them to do anything extra.. (NHTSA ID Number: 11558803)

51.     These experiences are not isolated or outlying occurrences. The internet is replete with consumer complaints on blogs and websites about the Fuel Pump Defect in the Class Vehicles and others of Defendant's vehicles with the same fuel pumps. Honda and Acura's customer relations departments routinely monitor the internet for customer complaints. Their customer relations divisions regularly receive and respond to customer calls concerning product defects. Through these sources, Honda and Acura were made aware of the Fuel Pump Defect. The complaints also indicate Honda and Acura's knowledge of the Defect and its potential danger.

52.     All vehicle manufacturers, including Defendant, are required by law (which is backed by criminal penalties) to routinely monitor and analyze NHTSA complaints to determine whether vehicles or automotive components should be recalled due to safety concerns. Thus, Defendant has knowledge of all NHTSA complaints. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

53.     Honda intentionally withheld and delayed information, slowly adding additional vehicles and model years to the recall over the span of three years. As evidenced in its own recall report.

**C.     Defendant's Belated, Piecemeal, Inadequate, and Incomplete Recalls Evidence Defendant's Knowledge of the Fuel Pump Defect.**

54.     Prior to May 21, 2020, Honda determined that a defect related to motor vehicle safety existed and so, on that date, initiated a safety recall of 136,057 Honda and Acura vehicles (NHTSA ID no. 20V-314; Defendant's "2020 Fuel Pump Defect Recall").

55.     On May 28, 2020, Honda initiated a stop sale and safety recall for all 2018-2019 Accord, Civic Hatchback, Civic Type-R, HR-V, 2019 Fit and 2019-2020 Insight affected by the 2020 Fuel Pump Defect Recall. [4]

56.     Nearly one year later, on March 19, 2021, additional model types and years were included in the recall, expanding the scope of the Fuel Pump Defect recall to an additional 628,124

---

[4]  https://static.nhtsa.gov/odi/rcl/2020/RCMN-20V314-1476.pdf (Last Viewed February 14, 2024).

Honda and Acura vehicles (NHTSA ID no. 21V-215; Defendant's "2021 Fuel Pump Defect Recall").

57.     On September 11, 2023, Honda observed a trend of incidents in vehicles outside of the affected population in Japan and restarted its investigation of the issue. (NHTSA ID no. 23V-858)

58.     On October 20, 2023, Honda analyzed the recovered parts and continued to investigate the issue. (NHTSA ID no. 23V-858)

59.     On December 1, 2023, Honda initiated a foreign safety recall of certain vehicles in Japan and China related to the same issue as its previous recalls in 2020 and 2021 (NHTSA ID no. 23F-254).

60.     On December 12, 2023, the recall was expanded to approximately 2.6 million 2017-2020 Acura and Honda vehicles manufactured by American Honda Motor Co. ((NHTSA ID no. 23V-858); Defendant's "2023 Fuel Pump Defect Recall").

61.     Honda again put a "stop sale" on the recalled vehicles and informed consumers a remedy is not yet available.

62.      The vehicles affected by the 2020 Fuel Pump Defect Recall, 2021 Fuel Pump Defect Recall, and 2023 Fuel Pump Defect Recall each stem from manufacturing defects arising from Honda (American Honda Motor Co.) between July 08, 2017 and September 29, 2020.

63.     In late-2023 and/or early-2024, Honda declared publicly that it intends to notify vehicle owners of the 2023 Fuel Pump Defect Recall in stages, with mailed notifications to all Class Members to begin in Feb. 2024 and subsequent mailings to occur as parts become available. Honda has not disclosed a timetable for when parts necessary to complete the 2023 Fuel Pump Defect Recall for all of the 2.6 million affected Vehicles.

64.     Despite initiating three recalls for the Fuel Pump Defect, upon information and belief, the 2023 Fuel Pump Defect Recall still does not encompass all known defective vehicle makes and models.

65.     Honda effectively is attempting to hide behind the shied of their so-called "Recall" but fails to adequately address the life-threatening defect. Class Members fail to timely receive notice of the recall, then, once notified, are told by Honda that replacement parts will not be available for

1  months, thus leaving Class Members without safe, reliable, transportation for unknown periods of

2  time without just compensation.

3  66.  Defendant knew or should have known about the Fuel Pump Defect because of the

4  sheer number of reports they received. For instance, Defendant's customer relations departments—

5  which interact with  Honda and Acura authorized service technicians to identify potentially

6  widespread vehicle problems and assist in the diagnosis of vehicle issues—have received

7  numerous reports of engine related problems relating to the fuel pump. Defendant's customer

8  relations departments also collect and analyze field data including, but not limited to, repair

9  requests made at dealerships and service centers, technical reports prepared by engineers that have

10 reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty

11 claims data.

12 67.  Defendant's warranty departments similarly review and analyze warranty data

13 submitted by their dealerships and authorized technicians to identify defect trends in its vehicles.

14 Honda and Acura dictate that when a repair is made under warranty (or warranty coverage is

15 requested), service centers must provide Defendant with detailed documentation of the problem

16 and the proposed/performed repair that describes the complaint, cause, and correction, and must

17 also save the broken part should Honda and Acura later decide to audit the dealership or otherwise

18 verify the warranty repair. Service centers are meticulous about providing this detailed information

19 about in-warranty repairs to Honda and Acura because the automakers will not pay the service

20 centers for the repair if the complaint, cause, and correction are not sufficiently described.

21 68.  Defendant also knew or should have known about the Fuel Pump Defect because of the

22 high number of replacement parts likely ordered from Defendant. All Honda and Acura service

23 centers are required to order replacement parts, including fuel pumps, directly from Defendant.

24 Other independent vehicle repair shops that service Class Vehicles also order replacement parts

25 directly from Defendant. Defendant routinely monitors part sales reports, and they are responsible

26 for shipping parts requested by dealerships and technicians. Defendant has detailed, accurate, and

27 real-time data regarding the number and frequency of replacement part orders. The volume of

28 orders for the fuel pumps and engine components used in the Class Vehicles was known to

Defendant and did, or should have, alerted the automaker to the scope and severity of the Fuel Pump Defect.

69.     Further, Defendant should have been prepared with sufficient replacement parts since Defendant had three years of knowledge regarding the Fuel Pump Defect.

**D.     Despite Knowledge of the Fuel Pump Defect, Defendant Marketed the Class Vehicles as Safe, Durable, and Reliable.**

70.     Defendant has long touted the safety and durability of their vehicles as well as the performance of its engines because it knows safety is material to consumers.

71.     On information and belief, Defendant marketed the Class Vehicles' safety, durability, and warranties throughout the class period. This is reflected by the sales brochures Defendant issued for various Class Vehicles, which point to vehicle safety.

72.     On information and belief, Defendant developed, created, and controlled all of the advertising, marketing, and point-of-sale materials for their respective Class Vehicles. Therefore, Honda and Acura could and should have disclosed the Fuel Pump Defect to Plaintiffs and Class Members in such materials.

**PLAINTIFFS' EXPERIENCES**

**E.     Plaintiff Stacy Penning's Experience**

73.     Mr. Penning was shopping for a safe and reliable vehicle for daily transportation. He made his selection due to his prior experiences with other Honda vehicles and because he believed it was suitably safe and reliable vehicle for general use as his personal vehicle. Therefore, on or around March 2023, he purchased a certified pre-owned 2018 Honda Civic from El Cerrito Honda, an authorized Honda dealership, believing it to be suitably safe and reliable.

74.     At the time of Mr. Penning's purchase, Honda knew that its fuel pumps were defective, but neither Honda, nor the Honda sales representative, disclosed the Defect to Mr. Penning when advertising or discussing the features, components, and performance of the Vehicle prior to its sale. In reliance on these material omissions and misrepresentations, Mr. Penning purchased and operated the Vehicle on the reasonable but incorrect belief that the Vehicle's fuel pump would operate properly as warranted.

75.     Prior to his purchase Mr. Penning received assurances from the Honda sales representatives, along with a vehicle history report, advising him that there were no known issues with the Vehicle or it's component parts prior to his purchase, including any prior or outstanding recalls or defective parts.

76.     Upon hearing about the Fuel Pump Defect and recall, Mr. Penning confirmed that his vehicle was subject to the recall through entering his VIN number on the NHTSA website.

77.     NHTSA confirmed that the remedy for the Fuel Pump Defect for Mr. Penning's vehicle is not yet available. NHTSA also confirmed the safety risk of the defect, advising Mr. Penning that if the fuel pump module is inoperative, the engine may not start or can stall while driving, increasing the risk of a crash or injury.

78.     Mr. Penning relies on his vehicle as his sole method of transportation to run errands, and for ordinary daily use.

79.     Had Mr. Penning not checked NHTSA, he would not have been informed of the Fuel Pump Defect. To date, Mr. Penning has not received any notice of the safety recall from Defendant.

80.     Neither Defendant nor any of its agents, dealers, or representatives informed Mr. Penning of the Fuel Pump Defect prior to his purchase of the Vehicle.

81.     Mr. Penning is a reasonable consumer who reasonably expects his Vehicle will not suddenly stall or fail to start and will not experience sudden and unexpected loss of power while operating his vehicle.

82.     Plaintiff reasonably expected that Honda would not sell or lease Class Vehicles with known defects, including the Fuel Pump Defect, and that it would disclose any such defects to its customers before they purchased or leased Class Vehicles. Plaintiff and Class Members did not expect Honda to conceal the Fuel Pump Defect.

83.     Had Plaintiff and Class Members been advised of the Fuel Pump Defect at or before the point of sale, they would not have purchased their vehicles or else would have paid significantly less for the Vehicle.

84.     Consequently, Plaintiff and Class Members have not received the benefit for which they bargained when they purchased or leased the Class Vehicles.

85.    As a result of the Fuel Pump Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

**F.    Plaintiff Erica Robinson's Experience**

86.    Mrs. Robinson was shopping for a safe and reliable vehicle for daily transportation.

87.    Therefore, in October 2019, she purchased a new 2019 Honda Accord from McGrath Honda of Elgin, an authorized Honda dealership. She made her selection because she believed the Vehicle she was purchasing was suitably safe and reliable for general use.

88.    At the time of Mrs. Robinson's purchase, Defendant knew that its fuel pumps were defective, but neither Defendant, nor the Honda sales representative, disclosed the Defect to Mrs. Robinson when advertising or discussing the features, components, and performance of the Vehicle prior to its sale. In reliance on these material omissions and misrepresentations, Mrs. Robinson purchased and operated the Vehicle on the reasonable but incorrect belief that the Vehicle's fuel pump would operate properly as warranted.

89.    Since purchasing her vehicle, Mrs. Robinson has brought her vehicle for routine maintenance and service to various authorized Honda dealerships, including Norm Reeves Honda Superstore Vista in Vista, California, Long Beach Honda in Signal Hill, California, and Carson Honda, in Carson, California.

90.    None of the authorized Honda dealers who serviced Mrs. Robinson's vehicle mentioned the Fuel Pump Defect to Mrs. Robinson, nor did they check to see whether her vehicle may be affected by the recall.

91.    Mrs. Robinson first learned of the Fuel Pump Defect and subsequent recalls through her Progressive Insurance App, which advised her that her vehicle's defective fuel pump may cause the fuel pump to become inoperative which could prevent her engine from starting or stall the engine while driving, increasing the risk of a crash.

92.    Mrs. Robinson promptly called Carson Honda in California and was advised that Honda does not have fuel pumps for replacement and could not provide a timeline for when Honda would have replacement parts available. The Honda representative further advised Mrs. Robinson that if she must drive the car, to do so very carefully, including that she should not pass any cars,

drive too fast, or too far from home in the event her vehicle engine stalls or fails to start. As a result of the Fuel Pump Defect, Mrs. Robinson does not feel safe operating her vehicle.

93.     Mrs. Robinson relies on her vehicle as her sole method of transportation to and from work, to run errands, and for ordinary daily use.

94.     Had Mrs. Robinson not checked her Progressive Insurance App on her own, she would not have been informed of the Fuel Pump Defect. To date, Mrs. Robinson has not received any notice of the safety recall from Defendant.

95.     Neither Defendant nor any of its agents, dealers, or representatives informed Mrs. Robinson of the Fuel Pump Defect prior to her purchase of the Vehicle.

96.     Plaintiff and Class Members are reasonable consumers who reasonably expect their Class Vehicles will not suddenly stall or fail to start and will not experience sudden and unexpected loss of power while operating their vehicles.

97.     Plaintiff and Class Members reasonably expected that Honda would not sell or lease Class Vehicles with known defects, including the Fuel Pump Defect, and that it would disclose any such defects to its customers before they purchased or leased Class Vehicles. Plaintiff and Class Members did not expect Honda to conceal the Fuel Pump Defect.

98.     Had Plaintiff and Class Members been advised of the Fuel Pump Defect at or before the point of sale, they would not have purchased their vehicles or else would have paid significantly less for the Vehicle.

99.     Consequently, Plaintiff and Class Members have not received the benefit for which they bargained when they purchased or leased the Class Vehicles.

100.     As a result of the Fuel Pump Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

## TOLLING OF STATUTES OF LIMITATIONS

101.     Defendant's concealment of the Fuel Pump Defect is ongoing, as evidenced by their piecemeal recalls and product improvement campaigns, which do not specifically identify the defect or offer a fix.

**G.      The Discovery Rule Justifies Tolling.**

102.     Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Fuel Pump Defect and misconduct complained of herein, or that Defendant was misrepresenting their true position with respect to the Fuel Pump Defect.

103.     Unless a Class Member experienced a catastrophic engine failure, Plaintiffs and Class Members would have no reason to discover the Fuel Pump Defect, and even if they did experience such a failure, would have no reason to discover the existence of the classwide Defect nor Defendant's widespread effort to conceal it.

104.     Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Fuel Pump Defect even with notice of the prior Fuel Pump Defect Recalls because Plaintiffs and Class Members reasonably relied on statements that their vehicle did not suffer from the Defect.

105.     Plaintiffs and Class Members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendant had concealed information about the Fuel Pump Defect in the Class Vehicles, which Plaintiffs discovered shortly before filing this action.

106.     For these reasons, the discovery rule tolls all applicable statutes of limitation with respect to claims as to the Class Vehicles.

**H.      Fraudulent Concealment Justifies Tolling.**

107.     All applicable statutes of limitation are also tolled by Defendant's knowing, active and ongoing fraudulent concealment of the facts alleged herein.

108.     Defendant concealed the Fuel Pump Defect, minimized the scope, cause, and dangers of the Fuel Pump Defect with inadequate recalls and purported remedies, and refused to investigate, address, and remedy the Fuel Pump Defect as it pertains to all Class Vehicles.

**I.    <u>Estoppel Justifies Tolling.</u>**

109.    Defendant was under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Fuel Pump Defect, and the inevitable repairs, costs, time, and monetary damage resulting from the Fuel Pump Defect.

110.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

### <u>CLASS ACTION ALLEGATIONS</u>

111.    Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

112.    Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

113.    The "Nationwide Class" is defined as:

All persons and entities nationwide that purchased or leased a model year:

a.    <u>Honda Models:</u>

    i.    2018-2020 Accord

    ii.    2017-2020 Accord Hybrid

    iii.    2018-2020 Civic

    iv.    2018-2020 Civic Type R

    v.    2018-2019 Clarity Plug in Hybrid

    vi.    2018-2020 CR-V

    vii.    2020 CR-V Hybrid

    viii.    2018-2019 Fit

    ix.    2018-2020 HR-V

    x.    2019-2020 Insight

    xi.    2018-2020 Odyssey

    xii.    2019-2020 Passport

    xiii.    2017-2020 Pilot

    xiv.    2018-2020 Ridgeline

b.    <u>Acura Models:</u>

    i.    2018-2020 ILX

    ii.    2018-2020 MDX

    iii.    2018-2020 MDX Sport Hybrid

    iv.    2017-2020 NSX

    v.    2018-2020 RDX

    vi.    2018-2020 RLX

    vii.    2018-2020 TLX

114.    The "California Subclass" is defined as:

All persons and entities nationwide who reside in California that purchased or leased a

vehicle with a model year:

    a.    <u>Honda Models:</u>

        i.    2018-2020 Accord

       ii.    2017-2020 Accord Hybrid

     iii.    2018-2020 Civic

     iv.    2018-2020 Civic Type R

      v.    2018-2019 Clarity Plug in Hybrid

     vi.    2018-2020 CR-V

    vii.    2020 CR-V Hybrid

   viii.    2018-2019 Fit

     ix.    2018-2020 HR-V

      x.    2019-2020 Insight

     xi.    2018-2020 Odyssey

    xii.    2019-2020 Passport

   xiii.    2017-2020 Pilot

   xiv.    2018-2020 Ridgeline

    b.    <u>Acura Models:</u>

        i.    2018-2020 ILX

       ii.    2018-2020 MDX

     iii.    2018-2020 MDX Sport Hybrid

     iv.    2017-2020 NSX

      v.    2018-2020 RDX

     vi.    2018-2020 RLX

    vii.    2018-2020 TLX

115.    Excluded from both the Nationwide Class and California Subclass are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

116.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

117.    While the exact number of Class Members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant and governmental officials. Upon information and belief, Defendant has sold and leased over 2,400,000 defective Vehicles nationwide during the relevant

time period, all of which have the defective fuel pump systems at issue. Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

118. Plaintiffs reserve the right to amend or modify the Class and Subclass definitions after they have had an opportunity to conduct discovery.

119. **Numerosity**: The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believes that at least thousands of consumers have purchased or leased the Class Vehicles in California.

120. **Commonality and Predominance**: This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including, without limitation:

        a. Whether Defendant engaged in the conduct alleged herein;

        b. Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

        c. Whether the Class Vehicles have and were sold with the Fuel Pump Defect;

        d. Whether a reasonable consumer would consider the Fuel Pump Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

        e. Whether the Fuel Pump Defect constitutes a safety defect;

        f. Whether Defendant knew of the Fuel Pump Defect but failed to disclose the problem and its consequences to Plaintiffs and Class Members;

        g. When Defendant discovered or knew of the Fuel Pump Defect, and what, if anything, it did in response;

        h. Whether Defendant had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class Members;

        i. Whether Defendant omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiffs and Class Members;

    j.    Whether Defendant's concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

    k.   Whether Defendant's conduct violates the California Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, the Song Beverly Act, and any other statutes asserted herein;

    l.    Whether Plaintiffs and Class Members overpaid for their Class Vehicles;

    m.  Whether Plaintiffs and Class Members suffered out-of-pocket losses because of the Fuel Pump Defect;

    n.   Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and, if so, in what amount;

    o.   Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    p.   Whether Defendant continues to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the press to date, are in fact Class Vehicles.

121.   **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent because Plaintiffs and each Class Member purchased a Class Vehicle and were similarly injured by Defendant's wrongful conduct as described herein. Plaintiffs and the Class Members suffered damages as a direct, proximate result of the same wrongful practices by Defendant. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class Members. Plaintiffs' claims are based on the same legal theories as the claims of the Class Members.

122.   **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for

Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class Members can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

123.   **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Com. Code § 2313)**
**(Plaintiffs individually, and on behalf of the Class)**

124.   Plaintiffs bring this cause of action individually and on behalf of the Class.

125.   Defendant is and was at all relevant times a merchant with respect to motor vehicles. Cal. Com. Code § 2104.

126.   Pursuant to Cal. Com. Code § 2313 express warranties by the seller are created as follows: Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

127.   In the course of selling and leasing the Class Vehicles, in its Warranty and in advertisements, brochures and other statements, Defendant expressly warranted in writing that the Class Vehicles were covered by certain warranties in Honda's "New Vehicle Limited Warranty" as described herein. This express warranty states that authorized Honda Motor Company dealers are required to "repair or replace any part that is defective in material or workmanship under normal use."

128.    Defendant's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class Members purchased or leased their Class Vehicles.

129.    Defendant breached its express warranties to repair defects in materials and workmanship of any part supplied by Defendant. Defendant has not repaired, and has been unable to timely and reasonably repair, the Fuel Pump Defect.

130.    At the time of selling or leasing the Class Vehicles, Defendant did not provide Class Vehicles that conformed to its express warranties.

131.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

132.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

133.    Also, as alleged in more detail herein, at the time that Defendant warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Honda wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class Members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

134.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy to "repair, replace or adjust" as many incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class Members' remedies would be insufficient to make Plaintiffs and the other Class Members whole.

135.    Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiffs and members of the Class given that Defendant knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Defendant and Class Members, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale due to its defective fuel pump, as alleged herein.

136.    Defendant had actual knowledge of, and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy. In addition, Defendant received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the fuel pump installed in the Class Vehicles.

137.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and the other Class Members have been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Com. Code § 2314)**
**(Plaintiffs individually, and on behalf of the Class)**

138.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

139.    Plaintiffs bring this cause of action individually and on behalf of the Class.

140.    Defendant is and was at all relevant times a merchant with respect to motor vehicles. Cal. Com. Code § 2104.

141.    A warranty that the Class Vehicles were in merchantable condition is implied by law, pursuant to Cal. Com. Code § 2314.

142.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which trucks are used. Specifically, the Class Vehicles suffer from an inherent Fuel Pump Defect, as alleged herein.

143.    Defendant had actual knowledge of, and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy. In addition, Defendant received, on information and belief, numerous consumer complaints and

other notices from customers advising of the Defect associated with the Fuel Pumps installed in the Class Vehicles.

144.    Plaintiffs and the other Class Members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Defendant and Plaintiffs and the other Class Members, as alleged herein.

145.    By extending express written warranties to end-user purchasers and lessees, Defendant brought itself into privity with Plaintiffs and Class Members.

146.    Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class Members are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

147.    Finally, privity is also not required because Plaintiffs' and the other Class Members' Class Vehicles are dangerous instrumentalities due to the Fuel Pump Defect.

148.    Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiffs and members of the Class given that Defendant knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Defendant and Class Members, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale due to its defective fuel pump, as alleged herein.

149.    As a direct and proximate result of Defendant's breach of the warranty of merchantability, Plaintiffs and Class Members bought the Class Vehicles without knowledge of the Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

150.    Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
### FOR BREACH OF EXPRESS WARRANTIES ("SBCWA")
### (Cal. Civ. Code §§ 1791.2 & 1793.2)
### (Plaintiffs individually, and on behalf of the Class)

151.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

152.    Plaintiffs bring this cause of action individually and on behalf of the Class.

153.    Plaintiffs and Class Members are "buyers" within the meaning of the SBCWA. Cal. Civ. Code § 1791(b).

154.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

155.    Defendant is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

156.    Plaintiffs and Class Members bought or leased Class Vehicles equipped with Defendant's defective fuel pump.

157.    Defendant made express warranties to Plaintiffs and Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2 as set forth herein.

158.    Specifically, in the course of selling and leasing the Class Vehicles, Defendant expressly warranted in writing that the vehicles were covered by certain warranties in Defendant's Warranty Repairs as described herein. This express warranty states that "Honda will repair or replace any part that is defective in material or workmanship under normal use."

159.    As set forth herein in detail, the Class Vehicles are inherently defective because they are equipped with Defendant's defective fuel pump impeller was improperly molded, resulting in low density impellers, which could prevent an engine from starting or cause the engine to stall while driving, potentially increasing the risk of a crash.

160.    The Fuel Pump Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers like Plaintiffs and Class Members.

161.    Plaintiffs have been advised by Defendant that the Class Vehicle is in need for repair, as set forth herein, but Defendant failed and continues to fail and is unable to timely make repairs to Plaintiffs' Class Vehicles under its Warranty.

162.    Defendant breached its express warranties to repair defects in materials and workmanship of any part supplied by Defendant. Defendant has not repaired, and has been unable to timely and reasonably repair, the Fuel Pump Defect.

163.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

164.    Accordingly, recovery by Plaintiffs and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

165.    As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs and Class Members received goods containing a dangerous condition that substantially impairs the value of the goods sold to Plaintiffs and Class Members, and have been damaged in an amount to be determined at trial.

166.    Pursuant to Cal. Civ. Code. §§ 1793.2 & 1794, Plaintiffs and other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Honda vehicles, or the overpayment or diminution in value of their Class Vehicles.

167.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class Members are also entitled to costs and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF IMPLIED WARRANTIES ("SBCWA")**
**(Cal. Civ. Code §§ 1791.1 & 1792)**
**(Plaintiffs individually, and on behalf of the Class)**

168.   Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

169.   Plaintiffs bring this cause of action individually and on behalf of the Class.

170.   Plaintiffs and Class Members are "buyers" within the meaning of the SBCWA. Cal. Civ. Code § 1791(b).

171.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

172.   Defendant is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

173.   Defendant impliedly warranted to Plaintiffs and the other Class Members that its Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

174.   In reality, the Class Vehicles do not possess those qualities that a buyer would reasonably expect.

175.   Plaintiffs and Class Members bought or leased Class Vehicles equipped with Defendant's defective fuel pump.

176.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

177.   The Class Vehicles are not suitable for the market, and would not pass without objection in the automotive industry and market because they are equipped with Defendants Fuel Pump Defect which can cause the vehicles to unexpectedly stall while driving or fail to start.

178.   Defendant's defective fuel pump makes the Class Vehicles unsuitable for safe driving. The Class Vehicles are not in merchantable condition, and are therefore not fit for their ordinary purposes.

34

179.    Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the Fuel Pump Defect.

180.    Defendant breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with Defendant's defective fuel pumps. Furthermore, the Fuel Pump Defect has caused Plaintiffs and other Class Members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

181.    The fuel pumps installed in the Class Vehicles were defective at the time they left the possession of Defendant, as set forth above. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the fuel pump and present an undisclosed safety risk to drivers, occupants, and others. Thus, Defendant breached its implied duty of merchantability.

182.    Defendant cannot disclaim its implied warranties as it knowingly sold or leased a defective product.

183.    Defendant knew, or should have known, that the Class Vehicles posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiffs and Class Members.

184.    Plaintiffs and the other Class Members have had sufficient direct dealings with Defendant and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract between Defendant and Plaintiffs and each of the other Class Members. Defendant's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and Class Members.

185.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements

provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

186.    In addition, by extending express written warranties to end-user purchasers and lessees, Defendant brought itself into privity with Plaintiffs and all Class Members.

187.    Defendant has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

188.    Plaintiffs and Class Members used the Class Vehicles, in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

189.    Defendant had actual knowledge of and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

190.    In addition, Defendant received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the Fuel Pump installed in the Class Vehicles.

191.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially renders them unsafe for their intended purpose and impairs their value to Plaintiffs and the other Class Members; Plaintiffs and Class Members have suffered damages and Defendant was unjustly enriched by keeping the profits for its unsafe products while failing to timely having to incur the cost of repair, replacement or a recall.

192.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of or a buyback of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

193.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class Members are also entitled to costs and reasonable attorneys' fees.

## **FIFTH CAUSE OF ACTION**
### **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, et seq.)**
**(Plaintiffs individually, and on behalf of the Class)**

194.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

195.    Plaintiffs bring this cause of action individually and on behalf of the Class.

196.    Defendant's actions, representations and conduct violated the CLRA because they extend to transactions that intended to result and which have resulted, in the sale or lease of goods to Plaintiffs and Class Members. Cal. Civ. Code § 1770.

197.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

198.    Plaintiffs and Class Members are "consumers" as defined by Cal. Civ. Code § 1761(d).

199.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

200.    Defendant made numerous representations concerning the Class Vehicles' specifications that were misleading, including marketing and advertising the workmanship of Class Vehicles and the nature and extent of Defendant's Warranty.

201.    Defendant also omitted material facts about the Class Vehicles, namely the Fuel Pump Defect.

202.    In purchasing or leasing Class Vehicles, Plaintiffs and Class Members were deceived by Defendant's failure to disclose that the Class Vehicles contain the Fuel Pump Defect, resulting in expensive damage for which Defendant will not provide coverage under its express or implied warranties.

203.    Defendant violated the CLRA in at least the following respects:

 a.    in violation of § 1770(a)(5), Defendant represented that the Class Vehicles have approval, characteristics, and uses or benefits which they do not have;

 b.    in violation of § 1770(a)(7), Defendant represented that the Class Vehicles are of a particular standard, quality or grade, when they are of another;

 c.    in violation of Section 1770(a)(9), Defendant has advertised the Class Vehicles as safe with the intent not to sell them as advertised; and

d.  in violation of § 1770(a)(16), Defendant represented that the goods have been supplied in accordance with previous representations, when they were not.

204.    Defendant violated the CLRA by representing the Class Vehicles were safe and free of defects when they were not and Defendant knew, or should have known, that the representations and advertisements were false and misleading.

205.    Defendant had a duty to disclose the Fuel Pump Defect because Defendant had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Defendant made partial representations about the quality of Class Vehicles but failed to fully disclose that the Fuel Pump Defect plagues Class Vehicles.

206.    Specifically, Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

a.  Defendant was in a superior position to know the true state of facts about the Fuel Pump Defect –a defect that can pose a safety risk—and associated repair costs in the Class Vehicles;

b.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Fuel Pump Defect;

c.  Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Fuel Pump Defect until manifestation of the Defect; and

d.  Defendant made incomplete representations about the safety and reliability of Class Vehicles generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

207.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price.

38

208.    Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or they would have paid less.

209.    A vehicle made by a reputable manufacturer of safe vehicles is worth more than a comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

210.    Defendant has known of the defective Fuel Pump since at least 2020, when it issued the first recall regarding the Fuel Pump Defect, thereby acknowledging numerous consumer complaints made to the NHTSA.

211.    However, Defendant continued to allow unsuspecting new and used vehicle purchasers to buy or lease the Class Vehicles and allowed them to continue driving dangerous vehicles.

212.    Defendant intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Class Vehicles and its fuel pumps with respect to materials, workmanship, design and/or manufacture.

213.    Plaintiffs and Class Members reasonably relied on Defendant's misrepresentations and omissions in purchasing or leasing Class Vehicles.

214.    Plaintiffs and Class Members have been damaged as a proximate result of Defendant's violations of the CLRA and have suffered actual damages as a direct and proximate result of purchasing or leasing defective Class Vehicles.

215.    The  filing this Complaint serves notice on Defendant of Plaintiffs' damages related to the Fuel Pump Defect in their Class Vehicles, pursuant with Cal. Civ. Code §1782(a).

216.    Under Cal. Civ. Code § 1780(a), Plaintiffs and Class Members seek actual damages, an order enjoining Defendant from further engaging in the unfair and deceptive acts and practices alleged herein, restitution, attorney's fees and costs.

217.    Under Cal. Civ. Code § 1780(b), Plaintiffs and Class Members seek an additional award against Defendant of up to $5,000 for each Class Member who qualifies as a "senior citizen"

or "disabled person" under the CLRA. Defendant knew or should have known that its conduct was directed to one or more Class Members who are senior citizens or disabled persons. Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Class Members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendant's conduct.

218.    Pursuant to Cal. Civ. Code § 3345, Plaintiffs and Class Members seek an award of trebled damages on behalf of all senior citizens and disabled persons comprising the Class as a result of Defendant's conduct alleged herein.

219.    Pursuant to CLRA Section 1780(a)(4), Plaintiffs and Class Members also seek punitive damages against Defendant because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and Class Members to potential cruel and unjust hardship as a result. See Cal. Civ. Code § 1780(a)(4). Defendant intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Defendant knew. Defendant's unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under Cal. Civ. Code § 3294.

220.    Plaintiffs further seek any other just and proper relief available under the CLRA.

### SIXTH CAUSE OF ACTION
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200)**
**(Plaintiffs individually, and on behalf of the Class)**

221.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

222.    Plaintiffs bring this cause of action individually and on behalf of the Class.

223.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

224.    Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally concealing the Fuel Pump Defect in the Class Vehicles from Plaintiffs and Class Members, along with concealing the risks, costs, and monetary damage resulting from the Fuel Pump Defect. Defendant should have disclosed this information because they were in a superior position to know the true facts related to the Fuel Pump Defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Fuel Pump Defect.

225.    The Fuel Pump Defect causes catastrophic engine failure in the Class Vehicles and this constitutes a safety issue that triggered Defendant's duty to disclose the safety issue to consumers.

226.    Defendant's acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Fuel Pump Defect and suppressing other material facts from Plaintiffs and Class Members, Defendant breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class Members. Defendant's omissions and concealment pertained to information that was material to Plaintiffs and Class Members, as it would have been to all reasonable consumers.

227.    The injuries suffered by Plaintiffs and Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class Members should have reasonably avoided.

228.    Defendant's acts and practices are unlawful because they violate California Civil Code sections 1668, 1709, 1710, and 1750, *et seq*., and California Commercial Code section 2313. Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

229.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated because of

such practices, and all other relief allowed under California Business & Professions Code section 17200.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE § 17500, ET SEQ.)**
**(Plaintiffs individually, and on behalf of the Class)**

230. Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

231. Plaintiffs bring this cause of action individually and on behalf of the Class.

232. California Business & Professions Code section 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

233. Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or through the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class Members.

234. Defendant violated section 17500 because their misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles as described herein were material, untrue, and misleading, and likely to deceive a reasonable consumer.

235. Plaintiffs and Class Members have suffered an injury in fact, including the loss of money or property, because of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the Class Members relied on Defendant's misrepresentations and omissions regarding the safety and reliability of the Class Vehicles. Defendant's representations and omissions were untrue because the Class Vehicles are distributed with a defective engine. Had Plaintiffs and the Class Members known this, they would not have

purchased or leased their Class Vehicles or paid as much for them. Accordingly, Plaintiffs and the Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

236. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's businesses. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

237. Plaintiffs, individually and on behalf of the Class Members, request this Court enter such orders or judgments as necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, to restore to Plaintiffs and the Class Members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, et seq.)
### (Plaintiffs Individually, and on behalf of the Class)

238. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

239. Plaintiffs bring this cause of action individually and on behalf of the Class.

240. Plaintiffs and Class Members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

241. Defendant is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C.§ 2301(4)-(5).

242. The Class Vehicles are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

243. Defendant's express warranties are each a "written warranty" within the meaning of the MMWA. 15 U.S.C. § 2301(6).

244. Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

245.    Defendant's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Vehicles' implied warranties are accounted for under Section 2301(7) of the MMWA, warranties which Defendant could not disclaim under the MMWA, when it failed to provide merchantable goods.

246.    This Court has original jurisdiction over this matter under CAFA and therefore can assert supplemental jurisdiction over this claim.

247.    Plaintiffs and Class Members have sufficient interactions with Defendant to create privity of contract; however, privity of contract is not required because Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Defendant and its authorized dealers, and specifically, of Defendant's implied warranties. Defendant's dealers are intermediaries between Defendant and consumers, that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Defendant with respect to Plaintiffs' and Class Members' purchases or leases of Class Vehicles. Defendant's warranties were designed for the benefit of consumers who purchased or leased Class Vehicles.

248.    As discussed herein, Defendant extended a three-year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee. Defendant also extended a five-year/60,000 mile Powertrain Warranty with the purchase or lease of the Class Vehicles.

249.    Defendant breached each of these express warranties by: (a) selling and leasing Class Vehicles with fuel pumps that were defective in material and workmanship, requiring repair or replacement within the warranty period; and (b) refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

250.    Defendant's breach of express warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

251.    The amount in controversy for each individual Plaintiff's claim exceeds the sum or value of $25 and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs; there are over 100 Class Members.

252.    Defendant has been afforded a reasonable opportunity to cure its breach of warranties by Plaintiffs' demand letter and when Defendant first diagnosed the fuel pump Defect.

253.    Resorting to any informal dispute resolution procedure is unnecessary and/or futile. At the time of sale to Plaintiffs, Honda knew, should have known, or was reckless in not knowing of its misrepresentations or omissions concerning the Fuel Pump Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiffs. Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the MMWA or otherwise that Plaintiffs resort to any informal dispute resolution procedure is excused and, thereby, deemed satisfied.

254.    As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution of value, costs, including statutory attorneys' fees and/or other relief as appropriate.

## NINTH CAUSE OF ACTION
### FRAUD/FRAUDULENT CONCEALMENT
**(Plaintiffs individually, and on behalf of the Class)**

255.    Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein .

256.    Plaintiffs bring this cause of action individually and on behalf of the Class .

257.     Defendant concealed and suppressed material facts concerning the performance and quality of the Class Vehicles—namely, the Fuel Pump Defect—and the quality of the Honda brand. Specifically, Defendant knew (or should have known of) the Fuel Pump Defect but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendant did so to boost sales and leases of Class Vehicles.

258.    Plaintiffs and Class Members had no way of knowing that Defendant's representations were false and gravely misleading, or that Defendant had omitted imperative details. Plaintiffs and Class Members did not, and could not, unravel Defendant's deception on their own.

259.    Defendant had a duty to disclose the true performance of Class Vehicles and the Fuel Pump Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendant; Defendant had superior knowledge and access to the facts; and knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendant also had a duty to disclose because they made many general affirmative representations about the qualities of the Class Vehicles.

260.    On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

261.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. The actions of Plaintiffs and Class Members were justified. Defendant was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

262.    Plaintiffs and the Class relied upon  Defendant's representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

263.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the price paid for their Class Vehicles. Plaintiffs and Class Members would have paid less for Class Vehicles had they known about the Fuel Pump Defect, or they would not have purchased or leased Class Vehicles at all.

264.    Accordingly, Defendant is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

265.    Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

266.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Fuel Pump Defect. Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and Class Members were not receiving trucks of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

267.    Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## TENTH CAUSE OF ACTION
### NEGLIGENCE
**(Plaintiffs individually, and on behalf of the Class)**

268.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

269.    Plaintiffs bring this cause of action individually and on behalf of the Class.

270.    Defendant had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiffs and the Class Members. Defendant breached its duties to Plaintiffs and the Class Members because they were negligent in the design, development, manufacture, and testing of the Fuel Pumps installed in the Class Vehicles, and Defendant is responsible for this negligence.

271.    Defendant was negligent in the design, development, manufacture, and testing of the fuel pumps installed in the Class Vehicles because they knew, or in the exercise of reasonable care should have known, that the Vehicles equipped with defective fuel pumps pose an unreasonable risk of serious bodily injury to Plaintiffs and Class Members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to become inoperative

which could prevent an engine from staring or stall an engine while driving, increasing the risk of a crash.

272.     Defendant owed Plaintiffs and the Class a duty to provide thorough notice of known safety defects, such as the fuel pumps' failures.

273.     Once it discovered the Fuel Pump Defect, Defendant also owed Plaintiffs and Class Members a duty to ensure that an appropriate and timely repair procedure was developed and made available to consumers.

274.     Defendant also owed Plaintiffs and the proposed Class a duty not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the Fuel Pump Defect. This duty is independent of any contractual duties Defendant may owe or have owed.

275.     Under the TREAD Act, Honda owed an independent duty to send notice to Plaintiffs and Class Vehicle owners, purchasers, and dealers whenever it "learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." 49 U.S.C. § 30118(c). Despite Defendant's awareness of the Fuel Pump Defect, it failed to timely notify owners, purchasers, and dealers. This duty is independent of any contractual duties Defendant may owe or have owed to Plaintiffs and Class Members.

276.     A finding that Defendant owed a duty to Plaintiffs and the Class would not significantly burden Defendant. Defendant has the means to efficiently notify drivers of Class Vehicles about dangerous defects. The cost borne by Defendant for these efforts is insignificant in light of the dangers posed to Plaintiffs and the Class by Defendant's failure to disclose the Fuel Pump Defect and to provide an appropriate and timely notice and repair.

277.     Defendant's failure to disclose the Fuel Pump Defect in Class Vehicles to consumers and the NHTSA is a departure from the reasonable standard of care. Accordingly, Defendant breached its duties to Plaintiffs and the Class.

278.     Defendant's conduct was contrary to public policy favoring the disclosure of defects that may affect customer safety; these policies are embodied in the TREAD Act, and the notification requirements in 49 C.F.R. § 573.1, *et seq*.

279.   As a direct, reasonably foreseeable, and proximate result of Defendant's failure to exercise reasonable care to inform Plaintiffs and the Class about the Fuel Pump Defect or to provide appropriate repair procedures, Plaintiffs and Class Members suffered damages in that they spent more money than they otherwise would have on Class Vehicles, which are of diminished value.

280.   Plaintiffs and the Class Members could not have prevented the damages caused by Defendant's negligence through the exercise of reasonable diligence. Neither Plaintiffs nor Class Members contributed to Defendant's failure to provide appropriate notice and repair procedures.

281.   Plaintiffs and the Class seek to recover the damages caused by Defendant. Because Defendant acted fraudulently and with willful, wanton and reckless misconduct, Plaintiffs also seek an award of punitive damages.

**ELEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiffs individually, and on behalf of the Class)**

282.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

283.   Plaintiffs bring this cause of action individually and on behalf of the Class.

284.   Defendant has long known that its fuel pumps have a propensity to fail, causing the vehicle to stall, posing a serious safety risk, which it concealed and failed to disclose to Plaintiffs and the proposed Class Members.

285.   As a result of its fraudulent acts and omissions related to the defective fuel pumps, Defendant obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and the proposed Class Members.

286.   Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Fuel Pump Defect, paid a higher price for their vehicles which actually had lower values.  Defendant also received money for vehicles and fuel pumps that Plaintiffs and the proposed Class Members would not have otherwise purchased or leased.

287.    It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

288.    Defendant's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

289.    Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained plus interest.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

      a.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

      b.   Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class;

      c.   Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

      d.   Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class;

      e.   Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

      f.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

      g.   Ordering Defendant to pay both prejudgment and post-judgement interest on any amounts awarded; and

      h.   Ordering such other and further relief as may be just and proper.

1

## DEMAND FOR JURY TRIAL

2        Plaintiffs, individually and on behalf of the other Class Members and all others

3   similarly situated, hereby demand a trial by jury as to all matters so triable.

4   Dated: February 16, 2024                    Respectfully submitted,

5
                                               /s/ *Leland H. Belew*
6                                              Leland H. Belew
                                               **MILBERG COLEMAN BRYSON**
7                                              **PHILLIPS GROSSMAN PLLC**
                                               280 S. Beverly Drive
8                                              Beverly Hills, CA 90212
                                               T: (865) 247-0080
9                                              F: (865) 522-0049
10                                             lbelew@milberg.com

11                                             Mitchell Breit *(pro hac to be requested)*
                                               Tyler Litke *(pro hac to be requested)*
12                                             **MILBERG COLEMAN BRYSON**
                                               **PHILLIPS GROSSMAN PLLC**
13                                             405 E. 50th St.
14                                             New York, NY 10022
                                               T: (865) 247-0080
15                                             F: (865) 522-0049
                                               mbreit@milberg.com
16                                             tlitke@milberg.com

17                                             Mason A. Barney *(pro hac to be requested)*
18                                             Lisa Considine *(pro hac to be requested)*
                                               **SIRI & GLIMSTAD LLP**
19                                             745 Fifth Avenue, Suite 500
20                                             New York, New York 10151
                                               Tel: (212) 532-1091
21                                             E: mbarney@sirillp.com
22                                             E: lconsidine@sirillp.com

23                                             *Kevin Laukaitis  (pro hac to be requested)*
24                                             **LAUKAITIS LAW LLC**
                                               954 Avenida Ponce De Leon
25                                             Suite 205, #10518
                                               San Juan, Puerto Rico 00907
26                                             Phone: (215) 789-4462
                                               E-mail: klaukaitis@laukaitislaw.com
27

28